NOBLE McDONALD, Appellee, v. ILLINOIS CENTRAL RAILROAD COMPANY, Appellant.

1. **Railroads:** NEGLIGENCE: INJURY TO PASSENGER ALIGHTING FROM TRAIN. Where a passenger went upon the rear platform of a car before it had come to a stop, and when the car stopped the front end of it was up to the platform of the station, but the rear end was not, and, though there was a light at the station, it was dark at the rear end of the car, and the passenger, after the train had stopped, attempted to alight upon the platform which he supposed to be there, but the car was suddenly jerked, and he fell and was injured, *held,* that the jury was warranted in finding that the passenger was not negligent in alighting at the rear end, and in finding, on the other hand, that the company was negligent in leaving the rear end of the car where it did, without warning to passengers, or giving proper precautions against their attempting to alight in such a place.

2. **Instructions to Jury**: ERROR WITHOUT PREJUDICE. Although an instruction given is technically erroneous, yet, if the state of the case is such that no prejudice could have resulted therefrom, it will be no ground for reversal.

3. ———: TECHNICALLY CORRECT BUT PROPERLY REFUSED. Although instructions asked are technically correct, yet, if they are so framed as to be inappropriate to a proper and fair presentation of the case to the jury, it is not error to refuse to give them.

4. **Personal Injuries**: MEDICAL ATTENDANCE: INSTRUCTION TO JURY. In an action for personal injuries, where the attending physician testified that "his charges for the injury were twenty-five dollars," held, that the giving of an instruction that plaintiff was entitled to recover, if at all, for "medicine and medical attendance, as shown by the evidence," was not reversible error on the ground that there was no evidence that any medicines were purchased.

5. **Evidence**: LEADING QUESTIONS. The plaintiff having been injured in alighting from the rear end of the defendant's car, the question, whether he was directed by any of the defendant's employees to get off at the front end of the car, was not objectionable as being leading.

6. ———: EXPERT TESTIMONY: HYPOTHETICAL QUESTION. Where an opinion is sought from a physician as an expert, it is not necessary that the facts upon which it is to be based should be stated in the question, when they have just been stated by the witness, and are understood by him and the jury.

7. ———: QUESTION OF MATERIALITY ON APPEAL: RECORD. This court can not pass upon the materiality of evidence which is not contained in the record.

*Appeal from O'Brien District Court.*—Hon. F. R. Gaynor, Judge.

Saturday, May 20, 1893.

Action for personal injuries. The following with certain omissions, are the facts as stated by the district court to the jury:

"That on or about the evening of the second day of December, 1890, while the defendant was so operating its passenger train, the plaintiff became a passenger thereon; that is, on a train run and operated by the defendant, by its agents and employees, from the town of Primghar to the town of Gaza, in this county, both

of said places being stations on the defendant's railroad. That the plaintiff purchased a first-class ticket at the station of Primghar, of the defendant's agent, to the station of Gaza. That just before reaching the station of Gaza the conductor or brakeman in charge of said train announced the station of Gaza, and notified the plaintiff that said train was about to stop at said station. That immediately thereafter said train came to a full stop. That the plaintiff, acting upon the announcement, and under the directions, of said conductor or brakeman, and believing that said train had arrived at said station of Gaza, proceeded to alight from said train, and was in the act of stepping from the platform of said car, or the steps thereof, when the defendant's agents, servants, or employees who were running or operating said train, negligently and without any warning started said train suddenly and quickly, throwing the plaintiff to the ground with great force, and causing him to strike, upon his head and shoulders, upon the ties of said railroad and upon the ground, and against the car, thereby breaking his right shoulder, tearing, straining, and lacerating the cords and muscles of his arm, bruising and wounding him badly in the head and face, and other parts of the body, thereby rendering him unconscious for a long time, causing him severe pain and suffering in body and mind; and causing a permanent injury to his shoulder and arm, and severe and permanent shock to his nervous system. That by reason thereof he was, and still is, unable to do any kind of work or labor, and has been confined to his house for a long time. * * * That on the night the injuries occurred it was very dark, stormy, and cold, and that none of the employees of the defendant were at or near the point where the injury complained of happened. That there was no light near said point. That the car from which the plaintiff alighted was not stopped at the platform of the station, but several feet

therefrom, which fact was not at the time known to the plaintiff. That the defendant and its employees were negligent in not stopping said train long enough for plaintiff to alight, and in not drawing said car opposite the depot platform, and in not having lights at the place where the plaintiff alighted, and in starting said train before plaintiff alighted, and in not giving the plaintiff a reasonable time in which to alight. That the plaintiff's injuries were directly caused by the defendant's said negligence, and that the plaintiff was free from negligence himself." The answer was a denial, and the issues were presented to a jury, which returned a general verdict for the plaintiff, with the following special findings:

"*Interrogatory No. 1.* Did the train in question stop at Gaza, at the usual and customary place for passengers to alight? *Answer.* Don't know.

"*Interrogatory No. 2.* Was the train in question stopped the usual and customary length of time on the night of December 2, 1890? *Answer.* Yes.

"*Interrogatory No. 3.* Was the platform light burning at the time the train in question arrived at Gaza station? *Answer.* Yes.

"*Interrogatory No. 4.* Was the front end of the car from which the plaintiff fell at the platform provided by the company for passengers to get on and off the train when the train in question stopped? *Answer.* No.

"*Interrogatory No. 5.* Did plaintiff go out on the rear platform of the car in question before the train came to a stop? *Answer.* Yes."

From a judgment on the verdict, the defendant appeals.—*Affirmed.*

*J. F. Duncombe* and *T. F. Ward,* for appellant.

*W. D. Boies* and *George F. Colcord,* for appellee.

Granger, J.—I. There is an assignment of error based upon the refusal of the court, at the close of the testimony, to direct a verdict for the defendant; but the same considerations are involved in another assignment,—that the verdict is not sustained by the evidence,—and they need not be considered separately. It is especially contended that the fourth special finding, that the front end of the ladies' car was not at the depot platform when the train was stopped, is without support in the evidence. As we view the record, the fact very conclusively appears that the end of the car was, when the train stopped, at the platform, and we shall regard that as a fact in the consideration of the case. The favorable facts for the defendant, then, are that the train stopped at the usual place for passengers to alight; that it stopped the usual length of time; that the platform light was burning; that the front end of the car in which the plaintiff rode was at the platform; and that he went out on the rear platform before the car had stopped, and, in alighting, fell and was injured. We are to consider these facts, with the evidence as to other facts, to know if, because of the plaintiff's own negligence, or a want of negligence on the part of the defendant, there can be no recovery.

1. Railroads: negligence: injury to passenger alighting from train.

Much importance is attached by the appellant to the fact that the plaintiff went to the rear, instead of the front, end of the car, to alight. As a matter of law, such an act was neither negligent nor improper. It is a matter of very common observation for passengers to leave cars from both platforms. This is a custom so general that it must be known to all railroad employees engaged on passenger trains. The different ways of going out are generally matters of choice or convenience to the passenger, more than of any regulation by the railway companies. Because of this custom, passengers may rightfully presume, until in some way the

contrary appears, that either platform of a car is accessible for egress.   If for any reason this right is to be restricted in particular cases, it is certainly the duty of the persons in charge of the train to use precautions against it, as by locking the door where egress is not intended, or placing some person there to give directions, or in some manner making known to the passengers the situation.

The case of *Cartwright v. Chicago & G. T. R'y Co.*, (Mich.) reported in 18 N. W. Rep. 380, is quite significant in several particulars regarding this case, and the cases, in principle, are quite parallel.   In that case a passenger also left the car at the rear end, and it is said by Cooley, C. J.: "Passengers not only do leave the cars from the rear and front, indifferently, but they are suffered to do so without objection.   *   *   * Under such circumstances it cannot be said that it is negligence *per se* for a passenger to leave a car at the rear."   It is further said in the opinion: "We also think that passengers, where not notified to the contrary, may rightfully assume that it is safe to alight from the car wherever it is stopped for passengers to leave it; and, if no light is given them to leave the car by, they are not to be charged with fault for leaving in the darkness."   In the same case it is further said: "If a car in which there were passengers was not standing where it would be safe for them to alight without assistance, it was the duty of the company to provide assistance, or give warning, or to move the car to a more suitable place."   These propositions have support in authorities cited in that case, and accord with our understanding of the law.   In that case neither end of the car was at the platform, but that fact was known to the passenger, and access could have been had from the car to the platform by passing through a front car. In this case the front end of the car was at the platform, but the rear end, where the plaintiff went out, was not,

nor was it light enough at that end for passengers to see to alight with safety. From the plaintiff's statements in evidence,—and he is the only one who knows the facts,—he was, when he fell, trying to alight onto the platform, which he supposed to be there, and the car was "jerked," and he fell upon the ends of the ties, and was injured. Under the rules of law, as we have given them, the jury could well find that it was negligence on the part of the company to leave the end of the car as it was, without warning to the passengers or proper precautions against their attempt to alight in such a place. By the same rules the jury could find that it was not negligence for the plaintiff to attempt to alight there.

The fact that the plaintiff went out onto the platform before the car stopped does not change the situation. There is no evidence that he attempted to leave the platform while the train was in motion, and the evidence was such that the jury could reasonably have found that he did not. In addition to the special findings the jury must have found that the company was negligent, and the plaintiff not negligent, and we think the findings fully warranted, under the evidence.

The foregoing considerations are conclusive of a number of questions presented in the case.

II. It is urged that the verdict is contrary to the seventh instruction given to the jury. We will not set out the instruction. It was given to meet **2. Instructions to jury: error without prejudice.** a phase of the case, under the evidence, of the car not being up to the platform of the depot. We are now considering the case with it a conceded fact that the car was there. It is conclusive from the record that the plaintiff left the car from the rear end, without any knowledge or thought of whether the front of the car was at the platform or not, and it is equally conclusive that the rear end of the car was not at the platform. These conclusive showings lead us to

a conviction that the instruction, even if technically erroneous, could not have been prejudicial.

III. Some seventeen instructions were asked by the defendant that were refused. Many, of them are limited in their scope to the law applicable to a single fact, and in most of them the rule stated is correct; but they are so framed as to be inappropriate to a proper and fair presentation of the case to the jury. We illustrate by quoting the sixth: "It is not negligence for an engineer, after a train has stopped at a station, to let on the necessary amount of steam to overcome the friction of the track, even if thereby this did create a jerking motion of the train in question when it was started." Conceding the correctness of the instruction, as an abstract rule, it is so disconnected from the other facts with which it must be associated, when applied to the case, that its refusal was proper. There is no claim of negligence because of the "jerking motion" in starting the train, but the negligence consisted in the want of suitable conditions for alighting; and when he was attempting to reach what he supposed to be the depot platform, from the lower step of the car platform, the jerking motion came, and he fell. If it be admitted that the train was started in a proper manner, the negligence is still the same. A careful reading of the instructions given and refused leads us to the conclusion that they involve no reversible error.

IV. The court said to the jury that the plaintiff was entitled to recover, if at all, for "medicine and medical attendance, as shown by the evidence." It is urged that there is no evidence of any expenditure for medicine. Dr. Louthan testified that "his charges for the injury were twenty-five dollars." Independent of that testimony, it does not appear that any medicines were bought. But certainly no prejudice resulted

*Marginal notes:*

3. ——: technically correct but properly refused.

4. PERSONAL injuries: medical attendance: instruction to jury.

from such a statement in the instruction. It doubtless had reference to the cost of medical treatment, which might include medicine, and was so understood.

V. The plaintiff, as a witness, was asked the following question: "You may state whether you were

**5. Evidence: leading questions.** directed by the defendant, or any one of its employees, or by its agents, to get off of the opposite end of this coach from the end that you did get off?" It is urged that the question is leading. We think not. It does not indicate the answer desired, and, in view of the information sought, it is not objectionable in form.

VI. Dr. Louthan was called to see the plaintiff on the third day of December,—the day after the injury.

**6. ——: expert testimony: hypothetical question.** He was again called the fore part of the next April, and said he found the plaintiff "suffering from erysipelas in his face and on his thigh." The following question was then asked: "*Question.* You may state whether or not his condition, as you have described it, in which you found him in April, was due to, or the result of, the injuries sustained by him on or about the second of last December, as you discovered them upon your visit to him upon the third of that month." It is contended that the question should show the facts upon which the expert testimony is to be based, or the opinion is founded. The doctor had just stated the facts as to the plaintiff in December, and again in April, and the question was based on such facts. It was not necessary that the facts should appear again in the question. Both the witness and the jury understood the facts upon which the opinion was based.

VII. The defendant offered in evidence certain time tables of the Dubuque & Sioux City Railroad

**7. ——: question of materiality on appeal: record.** and of the Illinois Central Railroad, which were excluded as immaterial, and complaint is made of the ruling. The tables

are not in the record, and of their contents we know nothing. The object of the evidence was to show that it was the Dubuque & Sioux City Company that was operating the road, instead of the defendant company, and hence the one liable. We can not judge of the materiality of the evidence for that purpose, in the absence of the tables, or some means of knowing their contents.

There are some points that we have not particularly considered in the opinion, but a careful examination discloses no reversible error, and the judgment is. AFFIRMED.