## LEE v. KANSAS CITY SOUTHERN RY. CO.

(Circuit Court of Appeals, Eighth Circuit. February 25, 1915.)

No. 4107.

1. CARRIERS ⬅️280—LIABILITY FOR INJURIES TO PASSENGERS.

It is the duty and the contract of a carrier to carry a passenger without unnecessary injury, and if he suffers injury to his person, that is not the natural and probable effect of transporting him with reasonable care, he may recover the damages sustained.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1085–1092, 1098–1103, 1105, 1106, 1109, 1117; Dec. Dig. ⬅️280.]

2. CARRIERS ⬅️318 — PASSENGER'S ACTION FOR INJURIES — QUESTIONS FOR JURY.

Proof of the running of a passenger train at a speed of 10 to 25 miles an hour through an open switch and into collision with stationary cars on a side track, in the absence of any evidence denying or excusing it, justifies the jury in finding a breach of the carrier's duty and contract to a passenger on such train.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1270, 1307–1314; Dec. Dig. ⬅️318.]

3. CARRIERS ⬅️320—PERSONAL INJURIES—QUESTIONS FOR JURY—EVIDENCE.

Where, in an action for personal injuries, there is such substantial evidence that plaintiff suffered injury that the court, in the discharge of its judicial duty, would sustain a verdict for plaintiff, the case should be submitted to the jury, though there is evidence to the contrary.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1118, 1126, 1149, 1153, 1160, 1167, 1179, 1190, 1217, 1233, 1244, 1248, 1315–1325; Dec. Dig. ⬅️320.]

4. DAMAGES ⬅️208 — PASSENGER'S ACTION FOR INJURIES — QUESTIONS FOR JURY.

In a passenger's action for injuries, evidence *held* sufficient to make a question for the jury as to whether he suffered injuries from a collision between the train on which he was riding and standing cars, notwithstanding a great preponderance of evidence tending to show that whatever he suffered was the result of diseases with which he was afflicted prior to the collision.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 54, 64, 68, 132, 144, 145, 205, 220, 533, 534; Dec. Dig. ⬅️208.]

5. EXCEPTIONS, BILL OF ⬅️13—INCORPORATING EVIDENCE—FORM.

While the defeated party should have the reporter's shorthand notes, or such portion of them as is material in the settlement of the bill of exceptions, transcribed into longhand, to enable the court and the opposing counsel to determine by a comparison therewith whether the narrative of

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the evidence in the bill of exceptions is correct and sufficient, and while the court should require that part of the evidence relating to the crucial issue to be reviewed on appeal, and which the successful party points out and requests to be presented in longhand to be transcribed and presented in that form, and should require such parts of the evidence to be set forth in the bill of exceptions as is necessary to enable the successful party to present with full force the evidence in its favor, where defendant's counsel, in objecting to the bill of exceptions because it was in narrative form and prepared by the official reporter from his shorthand notes without transcribing them into longhand, did not specify the testimony of what witnesses or upon what specific issues they thought should be presented by question and answer, the court did not err in refusing to require all the evidence to be transcribed in the form of question and answer and inserted in the bill of exceptions.

[Ed. Note.—For other cases, see Exceptions, Bill of, Cent. Dig, § 13; Dec. Dig. ☞13.]

In Error to the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Action by R. M. Lee against the Kansas City Southern Railway Company. Judgment on a directed verdict for defendant, and plaintiff brings error. Reversed and remanded, with directions.

See, also, 206 Fed. 765.

David B. Sain, of Nashville, Ark. (William H. Arnold, of Texarkana, Ark., on the brief), for plaintiff in error.

James B. McDonough, of Ft. Smith, Ark. (S. W. Moore, of Kansas City, Mo., on the brief), for defendant in error.

Before SANBORN, ADAMS, and SMITH, Circuit Judges.

SANBORN, Circuit Judge. In this case the plaintiff sued the railway company for damages because, while he was a passenger on one of its trains, it ran it through an open switch into collision with some cars on a side track and shocked, bruised, and injured his neck and head and his nervous system, so that thereafter he suffered and continues to suffer pain, his neck and shoulder became stiff, and his arm partially paralyzed. By its answer the defendant denied the material averments of the plaintiff and averred that at the time of the accident, and ever since, the plaintiff was suffering from rheumatism and Bright's disease, that these diseases were not aggravated and he was not injured by the collision, and that, if he has suffered, all his sufferings were caused by his rheumatism and Bright's disease. A large amount of evidence was introduced at the trial upon the issue whether his condition and sufferings after the accident were the effect of traumatic neurasthenia, as claimed by the plaintiff, or of rheumatism or Bright's disease, as insisted by the defendant, and at the close of the trial the court instructed the jury that the evidence was so conclusive that the plaintiff was suffering from Bright's disease that it could not permit a verdict for the plaintiff to stand, and they must return a verdict for the defendant. This instruction is specified as error.

[1-3] The evidence in narrative form fills 324 printed pages of the transcript, and it is useless to attempt to state it in detail. Conceding that the proof was conclusive, as the court below found, that the plaintiff was suffering from Bright's disease, it does not necessarily

follow that he sustained no injury from the collision. He was a passenger, and the duty and the contract of the defendant was to carry him without unnecessary injury. If he suffered injury to his person that was not the natural and probable effect of transporting him with reasonable care, he was entitled to recover whatever damages he sustained from that injury. Proof of the running of a passenger train at a speed of 10 to 25 miles an hour through an open switch and into collision with stationary cars on a side track, in the absence of evidence denying or excusing it (and this was the operation indicated by the testimony in this case), presents evidence from which a jury may lawfully find breach of duty and of contract by a carrier in an action for injury to a passenger caused by the collision. It does not follow, from the fact that the plaintiff had Bright's disease, that he could not have been or was not injured by the accident. A sick man is not more exempt from injury, from bruises and shocks, than a well man. Hence the real question at the close of the evidence was whether or not there was such substantial evidence before the jury that the plaintiff had suffered injury from the collision that the court in the discharge of its judicial duty would sustain a verdict to the effect that the collision was the cause of any pain, suffering, or injury to the plaintiff. If there was such evidence, the case should have been submitted to the jury, although there was evidence to the contrary.

[4] The plaintiff had testified that at the time of the accident he was lying in the seat of the car, with his neck twisted below the head rest and against the wall, with his foot on the seat in front of him; that the stoppage of the train caused him to strike his knees against the seat in front of him, to rebound and strike his head against some object; that the stoppage skinned two places on his left arm, each about as large as a dime, wrenched his neck, caused "something to slip or pop and give way," and produced severe pain in his neck at the time; that immediately thereafter he felt dazed and as though a heavy weight was attached to his feet; that the pain was at the top and in the back of his neck, where it joins onto the head; that he had never experienced any such heaviness or pains before; that the accident occurred in the night of September 22, 1909; that he continued about his business, but felt tired, worn out, and nervous; that on the third day after the collision, upon turning his head, he suffered a recurrence for 15 or 20 minutes of the pain which he first experienced just after the accident; that subsequently this pain recurred more frequently and became more severe, until a few weeks afterwards it became continuous, and during the first part of October he consulted his family physician, Dr. J. S. Hopkins, who examined and treated him; that he consulted this doctor during the remainder of the year 1909, and in subsequent years; that his health declined and his pain increased, but he continued at work until about March, 1910, when his head had become drawn to one side, and he was at times unable to support and move it with the muscles of the neck without the use of his hands; that in July, 1910, his right arm became partially paralyzed; that his strength and vitality continued to decrease until October, 1912, when they began to improve; that on September 26, 1909, he weighed 150 pounds; that his weight decreased

until in November, 1911, he weighed 119 pounds, and then it again increased until before the last trial it had reached 142 pounds, and his general health and comfort had improved, especially since February, 1913.

Dr. Hopkins testified that the plaintiff had suffered from, and he had treated him for, rheumatism in July and August, 1909; that he had recovered from that attack in September, 1909, before the accident; that he treated and repeatedly examined him after the accident, and that in his opinion the severe pains and other ills he suffered after September 22, 1909, were caused by the shock and bruise of the collision; and that he was suffering from traumatic neurasthenia caused by the accident.

There was some other testimony tending to sustain the evidence of the plaintiff and his physician, and a vast mass, a great preponderance, of evidence, consisting of testimony of his admissions that he was not injured by the accident, his actions after the accident, the testimony of physicians who had repeatedly examined him, and of other witnesses, to the effect that he was not injured by the collision, and that whatever he suffered was the result of Bright's disease and of rheumatism. A review of the entire evidence, however, has convinced that the theory of the plaintiff was supported by evidence so positive and substantial that the question whether or not his sufferings were caused by the accident or by his diseases fell within the province of the jury, and that if they had found that they resulted wholly or in part from the collision their verdict upon that question would have been sustained by the court, and for that reason the judgment below must be reversed.

[5] Counsel for the defendant in error, however, insist that the bill of exceptions is in such condition that it does not warrant our consideration of the error which has been discussed, because they objected to the bill at the time of its settlement by the court on the grounds that it was in narrative form, that it had been prepared by the official reporter from his shorthand notes without transcribing them into longhand, and that counsel for the defendant could not read the shorthand notes.

It is undoubtedly the duty of the defeated party to have the shorthand notes of the reporter, or at least such portion of them as is material in the settlement of the bill of exceptions, transcribed into longhand in order to enable the court and the opposing counsel to learn, from a comparison of the transcribed evidence with the narrative of the evidence relating to the questions still in controversy, whether or not the narrative is correct and sufficient. When, however, a trial has been completed, and the errors assigned in it are about to be reviewed by the court above, many portions of the evidence generally become practically immaterial. It is seldom that it is necessary that all the evidence should be presented, as it was given, to either court or counsel. It is stated that there were 133 witnesses who testified in this case. Defendant's counsel did not specify, in its objections to the settlement of the bill, the specific issues upon which, nor the testimony of what witnesses, they thought it necessary to the protection of the rights of their client that the bill of exceptions should contain by question and answer in the form in which it was given at the trial of the case. It is

not probable that it was necessary to present all of the evidence in that form.

The result is that but two questions are presented here. Was it error for the court below to refuse to require all the testimony to be inserted in the bill of exceptions in the form of question and answer? And was it error for that court to refuse to require the defeated party to present all the testimony taken by the reporter in the form in which it was given transcribed into longhand? To these questions the answer is that the court should have required that part of the evidence which related to the crucial issue remaining in the case to be reviewed by the court above, and which the defendant pointed out and requested to be presented in longhand, to be transcribed and presented in that form, and then, upon a comparison of the evidence so transcribed with the proposed bill of exceptions, it should have required such parts of the evidence set forth therein by question and answer as was necessary to enable the successful party to present with full force the evidence in its favor. As, however, the only question the court decided was that it was unnecessary to have all the evidence in the case transcribed in the form of question and answer and to insert it in the bill of exceptions, this court is unable to find that there was any error in the ruling of the court below, especially as it has expressly certified that the bill of ex-. ceptions contains all the evidence introduced in the case. The conclusion is that the bill of exceptions in this case is sufficient to present for review the question whether or not there was so much and such substantial evidence at the trial as would have sustained a verdict for the plaintiff.

There are other questions in this case, but none the decision of which would change the result, and the judgment below is accordingly reversed, and the case is remanded to the court below, with directions to grant a new trial.