## NEW YORK, N. H. & H. R. CO. v. LINCOLN.

(Circuit Court of Appeals, Second Circuit. April 13, 1915.)

### No. 218.

1. CARRIERS ☞280—CARE FOR SAFETY OF PASSENGERS.

While a railroad carrier is not an insurer of the safety of passengers, it is bound to use the utmost care, consistent with the nature and extent of its business, to guard against all damages which it could reasonably anticipate, not only while the passenger is upon the train, but while he is passing to and from the same.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1085–1092, 1098–1103, 1105, 1106, 1109, 1117; Dec. Dig. ☞280.]

2. CARRIERS ☞ 320, 347—ACTION FOR INJURY TO PASSENGER—MEANS FOR ALIGHTING—QUESTIONS FOR JURY.

At defendant railroad company's terminal in New York City the distance between the station platform and the platform of old-style cars was 3 feet, and the distance to the ground 5 feet. Plaintiff was a commuter, using daily suburban trains, composed of old-style cars. It was

defendant's custom to have attendants at all such trains to place planks or bridges across the intervening space, and plaintiff was aware of such custom, which in his experience had never been deviated from. When he passed from the car one morning the bridge had not been placed, nor was any warning given, and, walking behind a number of other passengers, he did not notice the omission, and stepped off into the opening and was injured. If he had looked, he would have seen that the bridge was not in place, and could have stepped across. *Held*, that the questions of defendant's negligence and plaintiff's contributory negligence were properly submitted to the jury as questions of fact.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1118, 1126, 1149, 1153, 1160, 1167, 1179, 1190, 1217, 1233, 1244, 1248, 1315–1325, 1346, 1350–1386, 1388–1397, 1402; Dec. Dig. ☞320, 347.]

In Error to the District Court of the United States for the Southern District of New York.

This cause comes here on writ of error to the United States District Court for the Southern District of New York on a judgment entered on a verdict in the said court on December 23, 1914, in favor of plaintiff and against defendant.

The plaintiff below, hereinafter referred to as plaintiff, was and is a citizen of the state of New York, and at the time the accident occurred was a commuter residing in New Rochelle, N. Y. The defendant below, hereinafter referred to as defendant, was and is a foreign corporation organized and existing under and by virtue of the laws of the state of Connecticut, and was and now is engaged as a common carrier in carrying passengers and goods for hire over its railroad. On or about September 13, 1913, plaintiff became a passenger for hire on one of defendant's cars on its railroad running between New Rochelle and the city of New York. The plaintiff alleged in his complaint that defendant's station—"the Grand Central Terminal" at Forty-Second street in the city of New York—and a large number of the cars of the defendant are so constructed and maintained that, as they stand at the station to allow passengers to alight from and board said cars, there is a space between the cars and platform of the station so wide that passengers in attempting to alight and board the cars are in constant danger of falling into the space between cars and platform, and that there is no device, appliance, or equipment on the cars or on the platforms thereof to lessen the space and to render the means of alighting from and boarding the cars safe and convenient. He also averred that in consequence of such failure to provide suitable appliances and equipment, and because of the carelessness, recklessness, and negligence of defendant, its servants, and employés, and while as a passenger on one of defendant's cars he was attempting to alight therefrom at the Grand Central Terminal on September 13, 1913, he fell into the space between the platform of the car and the platform of the Terminal, and sustained the injuries for which the action was brought. He also complained that at the time and place aforesaid the defendant carelessly and negligently failed to give any notice or warning to its passengers and the plaintiff concerning the space between the platform of the car and platform of the Terminal, and negligently and carelessly failed to light the space, and to place any guard or barrier about the same, or to supply any signal, trainman, or other means of warning as to the existence of such unguarded and unlighted space; and he asked damages to the amount of $15,000. At the close of the testimony defendant moved to dismiss the complaint, on the ground that plaintiff had failed to make out a cause of action by proving any negligence on the part of the defendant, and on the further ground that defendant had affirmatively proved contributory negligence on the part of plaintiff. The motion was denied, and the case submitted to the jury, which brought in a verdict for the plaintiff for $300.

Charles M. Sheafe, Jr., of New York City (James W. Carpenter, of Brooklyn, N. Y., of counsel), for plaintiff in error.

Walradt & Blaney, of New York City (Charles P. Blaney and Edwin J. Tetlow, both of New York City, of counsel), for defendant in error.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The plaintiff is a commuter on defendant's railroad, and was injured at the Grand Central Terminal in the city of New York in attempting to alight from one of defendant's cars. The station in question was constructed for the new style of cars, vestibule cars, from which passengers can step from the car platform directly to the station platform, there being only a space of a few inches between the two platforms. But when the old style of cars come into the station there is a distance of three feet between the platform of the station and the platform of such cars; and as it is practically impossible for passengers on the old style of car to alight safely from the platform of the car to that of the station, it is the custom of defendant to have attendants or "red caps" to bridge this open space by putting down a movable bridge or boards over which the passengers can pass.

To leave this space unguarded, a space three feet wide existing between the car platform and the station platform, and a distance of five feet to the ground below, makes a dangerous pitfall, into which an old, careless, or near-sighted person would be very likely to fall. It was because the railroad knew that the existence of this unguarded space was dangerous that it instructed its force of colored porters to meet incoming trains, made up of old style cars having no drop platforms, and bridge the space between the cars and the platform with planks. This practice had prevailed for a long time, and none of plaintiff's witnesses, including the plaintiff, could recall an instance when such space had been left unbridged; and no testimony was offered by defendant in contradiction thereof, but the testimony of defendant's witnesses was all to the same effect.

The plaintiff had resided in New Rochelle for a little over three months prior to the time of this accident, and had been riding on the defendant's train to New York every day since he had moved out there, using a commutation ticket. On the morning of September 13, 1913, he rode on defendant's train to the Grand Central Terminal station in New York, entering an ordinary passenger coach of the old-fashioned type, a three-step car. The plaintiff's testimony was that when the train reached the station he got up out of his seat, near the middle of the car, and moved along with the rest of the passengers towards the rear of the car; that he was behind possibly 12 to 15 passengers, who got off the car before he did, and as he walked out he was walking slowly and with short steps and in single file. The car was equipped with steel gates that were ordinarily closed when the train was in transit, and which kept passengers from going down the steps, and were at the proper time opened to allow passengers to get off the car. When he reached the platform of the car, the gate of the car was opened flat against the side of the car. There was no brake-

man or guard stationed on the platform who warned passengers, and no warning to "watch your step" was given. No board or plank to bridge the space between the car platform and the station platform had been put in place; and in stepping from the platform of the car, as he supposed, to the platform of the station, he stepped into an open space, and landed down underneath the car steps and underneath the station platform, falling a distance of five feet. The open space between the platform of the car and that of the station being only three feet, he could easily have stepped across it, had he observed it. Although some 12 passengers preceded him, he was the only one who fell. He testified that he could have seen the open space, had he been looking, but that he did not look. Passengers had become accustomed to find the space bridged over for them by "red caps," and the plaintiff was relying on the bridge being there as usual on the morning of the accident. Its absence found plaintiff off his guard and led to the accident.

[1] The law requires a carrier of passengers to exercise reasonable care for the protection of its passengers and to see that its station houses are reasonably safe, including its platform, walks, steps, and landings for use in waiting for, approaching, and leaving trains. The principle is well settled that a carrier is bound to exercise care in securing the safety of its passengers while boarding and alighting from its cars, and the degree of care required has been held to be the care which a very prudent person would have used under the circumstances. A carrier of passengers is not absolutely liable for their safety as a carrier of goods is for the safety of the goods. The carrier is not an insurer of their safety, but is bound to exercise a high degree of care respecting them. Thus in Nichols v. Lynn & Boston Railroad Co., 168 Mass. 528, 530, 47 N. E. 427 (1897), the Supreme Judicial Court of Massachusetts says that, while the carrier is not bound to adopt all possible precautions to protect its passengers from injury in leaving its cars, it is bound "to use the utmost care consistent with the nature and extent of its business to guard against all dangers which it could reasonably anticipate," and if it fails to do so is responsible for its neglect.

In Pennsylvania Company v. McCaffrey, 173 Ill. 169, 50 N. E. 713 (1898), the Supreme Court of Illinois held that the relation between passenger and carrier did not cease upon the arrival of a train at the place of the passenger's destination, but the company was bound to furnish him an opportunity to safely alight from the train; and it said, in speaking of the carrier's duty respecting him:

"It is its duty, not only to exercise a high degree of care while the passenger is upon the train, but also to use the highest degree of care and skill, reasonably practicable, in providing the passenger a safe passage from the train."

In Appleby v. Railroad Company, 60 S. C. 48, 58, 38 S. E. 237 (1900), the Supreme Court of South Carolina declares that "railroads owe extraordinary care to passengers."

When a railroad stops its trains at a station platform and so invites its passengers to alight, the law imposes upon it the duty of using due

care to provide proper and safe means of getting from the platform of the cars to the platform of the station.

In Boyce v. Manhattan Railway Co., 118 N. Y. 314, 23 N. E. 304 (1890), the Court of Appeals of the state of New York had before it a case which somewhat resembles the case at bar. The defendant in that case was a carrier of passengers on a line of elevated railway in the city of New York, and the plaintiff was a passenger upon one of defendant's trains, from which she was attempting to alight at the time of the accident. The platform of the station where the accident occurred was built on a curve, and each car as it stopped there touched the curve at a tangent, so that the middle part was within 1 or 2 inches of the platform, while the ends were about 14 inches therefrom. The result of this was an open space between the steps of the car and the platform of the station, several feet long and 14 inches wide, and this space was left open and unguarded. Nothing was put across the hole for passengers to step on as they alighted, and no warning or assistance was given by the persons in charge of the train. If the passengers saw the hole, they could step across it; but unless they saw it, there was nothing to prevent them from stepping into it. When the plaintiff attempted to step from the car to the platform, she stepped into the open space, fell through it, and was injured. The Court of Appeals held that the question of defendant's negligence and of plaintiff's contributory negligence were properly submitted to the jury. In the course of its opinion the court said:

"It is not essential to inquire why the railroad was constructed with so sharp a curve at the place where this accident occurred, nor whether the defendant is responsible for the way that the South Ferry station was built. By stopping its trains at the point in question, it invited the passengers to thereby alight, and was thereby charged with the duty of using due care to provide proper and safe means of getting from the platform of the cars to the platform of the station. Even if the open space was necessary, owing to the peculiarities of the location, it was not necessary to leave it unguarded or unlighted. Some precaution, adapted to the situation, could have been used, such as throwing a plank across, or stationing a trainman to warn and assist passengers in alighting. At least the unguarded hole could have been well lighted, so as to be easily seen, and the passengers thus enabled to avoid the danger. We think that the evidence required the submission of the case to the jury for them to determine whether, under all the circumstances, the defendant was guilty of negligence that caused the injuries sustained by the plaintiff. Smith v. N. Y. & H. R. R. Co., 19 N. Y. 127 [75 Am. Dec. 305]; Hulbert v. N. Y. C. R. R. Co., 40 N. Y. 145; Sexton v. Zett, 44 N. Y. 430; Weston v. N. Y. E. R. R. Co., 73 N. Y. 595; Hoffman v. N. Y. C. & H. R. R. R. Co., 75 N. Y. 605; Dobiecki v. Sharp, 88 N. Y. 203."

In that case the plaintiff had never landed at this particular platform before, and did not know of the danger to be encountered. The court said she "was ignorant of any circumstance requiring the use of special care." On the question of contributory negligence the court said:

"Under the circumstances, which she had the right to assume existed, she was under no obligation, as matter of law, to look before she put her foot down; but it was a question of fact for the jury to decide, not only whether she should have been more vigilant, but also whether, if she had looked, she could have seen the hole in the surrounding darkness."

The defendant, however, insists that it cannot successfully be contended that it was negligent in not having had the space bridged before the plaintiff undertook to alight. The basis for this claim is that there was a bridge which was about to be put in place, but that the passengers did not wait until it could be put in place. It seems that there were three "red caps" putting bridges in place upon the train in question. One of them had put in place the bridge on the front platform of the car in which plaintiff rode, and then started for the rear platform to do the same with another bridge on that platform. But before he reached it the plaintiff, in his attempt to alight, had already fallen. The porter's testimony was "that he was a half a car's length away and running with his board" when the accident occurred. But the fact is not controverted that the defendant had taken no precautions to have the gate of the car kept closed until the bridge was put in place, and 12 or 15 passengers had been permitted to alight, no guard being present to warn them to watch their step. The door of the car might have been locked, or the gate of the car kept closed, until the conditions had been made safe for passengers to alight, or a guard might have been provided to warn passengers of their danger, or some provision made for preventing passengers from leaving the car until the bridge was down. Under the circumstances the defendant has no cause to complain that the court left it to the jury to say whether a failure to take any of those precautions and the failure of the porter to get his bridge in place before the passengers were permitted to leave the car amounted to a failure to exercise that reasonable care for the safety of passengers which the law imposed upon it. The court cannot say as matter of law that the defendant was not negligent.

In McDonald v. Illinois Central Ry. Co., 88 Iowa, 345, 55 N. W. 102 (1893), the Supreme Court of Iowa discussed the question as to the right of a passenger to alight from the rear platform of a car, instead of from the front platform. It said that it was a general custom for passengers to leave the cars from both platforms, and that because of this custom passengers had the right to presume, until in some way the contrary appeared, that either platform of a car was accessible for egress, and that, if the right was to be restricted in particular cases, it was the duty of the persons in charge of the train to use precautions against such egress, as by locking the door, or placing a person there to give directions.

[2] But if defendant was guilty of negligence, still there could be no recovery by plaintiff, if plaintiff was guilty of contributory negligence. The defendant insists that the plaintiff was guilty of such negligence, and plaintiff as strenuously denies it. The plaintiff was thoroughly familiar with the station, knew that a bridge was used to connect the car platform with the station platform, and admits that if he had looked he would have discovered that it had not yet been put down at the time he attempted to alight.

In Ayres v. Delaware, L. & W. R. R. Co., 158 N. Y. 254, 53 N. E. 22 (1899), the plaintiff was injured while walking on a railroad station platform in order to enter her train. She testified that she was walking as she always did, was not looking down on the platform, but looking

straight ahead in the direction of the car she was seeking. She had bought her ticket and was in the act of taking passage in defendant's train. The court held that a passenger walking on a station platform to enter a train was not bound as matter of law to look down on the platform while walking a given distance thereon, although the jury could so find as a matter of fact, where the passenger was injured by stumbling over a mail bag thrown upon the platform from an incoming train. The court said:

"She had the right to presume that the platform was a safe place, because it was provided by the defendant for passengers to walk upon as they were invited to enter its cars. Hence instructions that would be proper for a place of known danger, such as a railroad crossing at grade, would not be appropriate to a place which the passenger had a right to presume was safe. * * * The platform of a railroad station, however, is not a place of known danger, but is presumed to be a place of safety. In this respect it is not unlike an ordinary sidewalk on a public street, which the wayfarer has the right to assume is in a safe condition until in some manner warned of danger."

In Smith v. Brooklyn Heights Railroad Co., 129 App. Div. 635, 114 N. Y. Supp. 62 (1908), the Appellate Division of the Supreme Court of New York held that, as it was matter of common knowledge that there is a space between the cars and platforms on elevated railroads, one who, on a well-lighted platform, in attempting to board a car on an elevated railroad at a time when there was no crowd and she had leisure to pick her steps, did not look down to see where she was stepping, and stepped into the open space and was injured, was guilty of contributory negligence as a matter of law. The court said:

"It appears in evidence that no one else stepped into the space; other passengers found no difficulty. The plaintiff alone, paying no attention to her steps, or where she was going, went blindly into the opening. If she had exercised any care, there is no reason to suppose that her safety would have been endangered. It is a matter of common knowledge that there is a space between car and station platforms on all railroads."

The plaintiff in that case contended that she had the right to assume that no such space existed between the "car and station platforms." This case, however, differs in material respects from the case at bar. It is true that in both cases the passenger was paying no attention to his steps, and that, if he had been, the accident would have been avoided. In both cases the injury resulted from walking into the open space between the platform of the station and the platform of the car. But there the analogy ceases. In the above case the sole negligence charged in the complaint was that the car was constructed in such a manner as to leave a space between it and the station platform. There was no evidence that the railroad company was in the habit of putting down planks to bridge the space, and the passenger could not have relied on any such custom. Indeed, it is matter of common knowledge that on the elevated and subway trains in New York no such custom exists. On the other hand, in the case at bar such a practice existed, and the injured party knew of it, and in commuting daily over the line had on all previous occasions found the space bridged, and was relying on the practice when he attempted to alight at the time of the accident. Whether in relying upon it, and in walking without looking under the

circumstances, he was guilty of negligence, is a question which we cannot answer in the affirmative as a matter of law.

It certainly cannot be said as matter of law that one was negligent who was a frequent passenger on this road, and knew of the custom to provide a bridge from the car to the platform for the convenience and safety of the passengers in alighting, and who assumed that on the morning of the accident it was in place as usual. In a case such as this the carrier has no cause to complain if the trial judge leaves it to the jury to determine whether the plaintiff, in doing what he did in attempting to alight from defendant's train at the time of the accident, was in the exercise of that degree of care and caution that a man of ordinary prudence and ordinary caution would exercise under similar circumstances. This in effect was what the trial judge did. He charged the jury that:

"It is for you, gentlemen, to say whether it was or was not the exercise of due care on the part of the plaintiff to act in that way—whether the plaintiff should have looked where he was going at that time, because he says he could see. * * * Was he obliged as a reasonably prudent man to look as he alighted from the train, or was he justified in going along and relying on what he says had been there before, namely, the presence of a bridge that was put down by the attendant, between the car and the station platform? It is for you to say, therefore, whether the defendant was negligent, and whether, if the defendant was negligent, the plaintiff was sufficiently free from contributory negligence to make the defendant responsible. If you find that the plaintiff did act in the way which a reasonably prudent man would not have acted, then you must find for the defendant, even though the defendant was negligent. If, on the contrary, you find that the plaintiff acted as a reasonably prudent man would act, and that the defendant should have put his plank down to protect him, then you are to find for the plaintiff."

The question of defendant's negligence and of the contributory negligence of plaintiff were questions which the court had the right to submit to the jury. There was no error in the charge. The jury by its verdict has found defendant guilty of negligence, and plaintiff free from contributory negligence. The jury might well have concluded that plaintiff was not negligent, in view of the fact that heretofore he had always found the gap bridged, and that he was guilty of no fault in assuming that it was bridged that morning as usual.

Judgment affirmed.