## RAYMOND & WHITCOMB CO. v. EBSARY.

(Circuit Court of Appeals, Second Circuit. December 7, 1925.)

No. 125.

**1. Shipping ⬤⟹166(1)—Passenger on Mediterranean cruise entitled to protection from cruise manager.**

Passenger, who had contract for Mediterranean cruise, *held* entitled to every precau-

tion for his personal safety, and to respectful treatment from manager of excursion and its servants, and to protection from violence and insult, from whatever source arising.

**2. Shipping ⬤⟹166(1)—Manager of Mediterranean cruise liable for improper acts of servants towards passengers.**

Manager of Mediterranean cruise is liable for improper acts of servants towards passengers during existence of relation between it and passenger.

**3. Shipping ⬤⟹166(1)—Jury may not consider as element of damages passage money, where contract for passage was fully performed.**

In suit by passenger against managers of Mediterranean cruise for damages resulting from improperly prohibiting him from making side tour, jury may not consider as element of damage passage money for major cruise, where such contract was fully performed.

**4. Shipping ⬤⟹166(4)—Effect of wife's sickness on passenger inadmissible, notwithstanding it was caused by improper act of cruise manager.**

In action by passenger against manager of Mediterranean cruise for damages arising from improper act of one of cruise managers, effect of wife's sickness on passenger *held* inadmissible, even though occasioned by such act.

**5. Shipping ⬤⟹166(1)—Distress or humiliation of another does not enter into damages suffered by passenger, who was prohibited from accompanying side tour by cruise manager.**

Damages to passenger on Mediterranean cruise must be confined to pecuniary injury actually sustained by him by improper act of cruise manager in prohibiting him from going on side tour, and shock, distress, or humiliation of another does not enter into damages suffered.

**6. Evidence ⬤⟹127(1), 128—Attending physician may testify to complaints of patient, but testimony of third person inadmissible.**

Attending physician may testify to complaints made to him when he attends patient: but testimony of third person, other than physician, of complaints, is not admissible.

**7. Evidence ⬤⟹317(3)—Statements made to doctor, days after occurrence complained of, is not part of res gestæ, and is hearsay.**

Statements made to doctor in Paris, some time after occurrence on boat from which plaintiff alleges injury, would not be part of res gestæ, but would be hearsay, notwithstanding expressions of mental or bodily injuries which are made at time of injury are admissible.

In Error to the District Court of the United States for the Western District of New York.

Action by Frederick G. Ebsary against the Raymond & Whitcomb Company. Judgment for plaintiff (4 F.[2d] 285), and defendant brings error. Reversed, and new trial ordered.

See, also, 300 F. 685, 686.

Kenefick, Cooke, Mitchell & Bass, of Buffalo, N. Y. (Thomas R. Wheeler, of Buffalo, N. Y., of counsel), for plaintiff in error.

Harlan W. Rippey, of Rochester, N. Y., for defendant in error.

Before ROGERS, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. The plaintiff in error conducts tours and cruises to various parts of the globe. It conducted a Mediterranean cruise in the late winter and spring of 1923 on the ship Rotterdam, and contracted with the defendant in error that for $4,800 he and his wife were entitled to all the pleasures, comforts, and benefits of the cruise. They were entitled to board, lodging, transportation, and service of cruise managers and guides. A certificate of membership in this cruise was issued to him. The vessel sailed February 10th, proceeded to the Azores, Madeira, Lisbon, Malaga, Algiers, Naples, Straits of Athens, and then to Constantinople. On the evening of March 15th the vessel arrived at Beyrouth. One of the privileges of the cruise was an option to make certain side trips referred to in a pamphlet issued by the plaintiff in error and given to the defendant in error for his information. Among the side trips permitted was the Damascus-Jerusalem trip, which was under the management of a cruise manager of the defendant in error. This side trip was arranged for when the party arrived at Beyrouth. There were about 90 passengers out of a total of 475 who arranged to take it. At this point it was necessary to disembark from the boat by tender. A bulletin posted the night before announced disembarkation at 8 o'clock in the morning.

Defendant in error, after breakfast, went to the barber shop, which was on C deck, and his wife waited on the debarkation deck. There were people standing at the foot of the stairs and in the hallway, but no one was disembarking when the defendant in error arrived from the barber shop, and thereupon he says that he spoke to his wife saying, "What! Another wait this morning?" to which the cruise manager replied, "What of it?" This remark was repeated, he says, three times. Whereupon the defendant in error said, "I thought we were to get off the boat at 8 o'clock." To this the cruise manager replied, "If I hear any more out of you, I will put you off this boat," and defendant in error said, "I challenge you to put me off this boat." When no reply was made, he repeated it again, whereupon the manager said he could not take the trip.

While the defendant in error and his wife were passing along the gangplank, the purser stood by, put his hand on defendant in error's shoulder, and told him he could not go ashore because orders were given accordingly. This prohibition took place while his fellow passengers stood by. Whereupon the defendant in error and his wife went to their stateroom and did not take the trip. The plaintiff in error's agent and manager gives another version of this occurrence. We must assume, however, that the jury found as the defendant in error testified. This is the breach of the contract which forms the basis of this action.

[1, 2] The Rotterdam called at Jerusalem on March 20th and gave opportunity for those not taking the side trip to see Jerusalem and visit places of interest. The defendant in error and his wife took advantage of this stop, and did visit places of interest, after which the vessel went to Alexandria, in northern Egypt, where other side trips were provided. The defendant in error did not take these, claiming that this was due to the episode at Beyrouth. He says that, after leaving Alexandria, he had nervous indigestion, headache, and cold, and "worried a lot, and did not sleep well," and when he got to Paris he was confined to his bed for one week. The defendant in error, by the terms of his contract, expressed and implied, was entitled to not only every precaution which could be used by the plaintiff in error for his personal safety, but also to respectful treatment from it and its servants. As a passenger he was in great measure under the protection of the plaintiff in error, even from violent conduct of other passengers or their employees, who might be temporarily upon the vessel. The obligation was to carry safely and properly and to treat him respectfully. If the performance of this duty was intrusted to servants, the law holds the plaintiff in error for the manner in which they executed the trust. He was entitled to protection from violence and insult, from whatever source arising. Lee v. Kansas City So. Ry. Co., 220 F. 863, 136 C. C. A. 493; N. Y., N. H. & H. v. Lincoln, 223 F. 896, 139 C. C. A. 334; Memphis St. Ry. Co. v. Bobo, 232 F. 711, 146 C. C. A. 634; Gillespie v. Brooklyn H. R. R., 178 N. Y. 347, 70 N. E. 857, 66 L. R. A. 618, 102 Am. St. Rep. 503. No matter what the motive is which incited the servant to commit an improper act toward him during the existence of the relation, the plaintiff in error is liable for the act and its natural and legitimate consequences. The questions of fact presented by

the evidence on this issue were properly submitted to the jury.

Exceptions were taken requiring our consideration. The contract for which $4,800 was paid did not include the Damascus-Jerusalem side trip. The certificate of membership in the cruise provided: "Including the shore excursions, which are provided in accordance with the printed itinerary, subject to any special arrangements noted, and under the conditions specified in our booklet and ticket, it being understood that the extra excursions described as 'optional' are to be taken at the passenger's discretion and at additional cost." The printed itinerary did not include this side trip. It was an optional excursion. This option may never have been exercised by the defendant in error. When he concluded to do so, he entered into another contract and paid a new consideration for the passage. He could not have been excluded without responsibility. The court charged, first, that the defendant in error was entitled, if the jury found a breach of the contract, to the sum of $90 paid, and also the sum of $2,405, which was the total amount of the passage money paid by him. After request to charge by counsel for the plaintiff in error, the charge was modified by the court as follows:

"While I pointed out that that was an element of damages for you to consider, still you are not bound by it. You may allow him a less sum than the amount stated. You are not called upon to allow him the precise amount of damages expended for passage money. I simply mentioned that as an element which you have the right to take into consideration. If you take it into consideration, you will have in mind that he lived aboard the vessel for this period of time and provided with the comforts usually provided aboard vessels of that kind.

"Mr. Wheeler: I ask your honor to charge that there is no evidence that the contract was in any way breached, except in connection with the side trip.

"The Court: Declined.

"Mr. Wheeler: Exception. * * *"

Later counsel stated:

"My point is that the main trip was completed, and there is no evidence of any breach of that, and how he can get his $2,405 back I do not see.

"The Court: I think the jury have the right to consider that. I will modify my instructions in reference to his being entitled to the return of the entire passage money. I think I have already done so. In place of what I stated, I instruct the jury that they

may take into consideration the amount of passage money that he paid, and also consider the board and all the other accommodations that he had aboard the vessel in making their award."

To which counsel excepted. Later, at the request of counsel for the plaintiff in error, the court charged that, if the jury found there was a complete breach of the contract, the defendant in error was entitled to recover back the purchase money for the trip, $2,495, and that they must add to this interest from the respective dates of the purchase of each ticket. To which counsel excepted as follows:

"Mr. Wheeler: I desire to except to that on the ground that under no circumstances would it be possible to return such a verdict, in view of the fact that your honor, at my request, charged the jury that they could not include the passage money, because the plaintiff got his money's worth on the trip.

"The Court: I will change that, and decline it.

"Mr. Moore: I do not understand that your honor so charged.

"The Court: Neither do I, but it is not necessary to go over it again. (Exception.)"

In this state of the charge, it appears that the court finally allowed the jury to award a recovery for $2,405, plus $90 and interest for breach of the contract.

The defendant in error fully carried out its obligations of the main trip of the Mediterranean cruise by supplying transportation, furnishing the meals, and certain optional shore excursions, excepting, of course, the Damascus-Jerusalem trip. They did not fail in the fulfillment of this contract. What they failed in was the contract for the side trip, for which $90 was paid. He did not suffer damages by reason of any violation of the contract for this main trip, since there was no violation thereof. To allow the return of $2,400 passage money would be unjust. The size of the verdict of $7,500 indicates that the jury exercised the privilege under the charge of adding this sum to the sum arrived at for other damages. The defendant in error was entitled to recover, as an element of damage, the $90, since the contract for the other side trip was unperformed. This was an extra service, rendered under a special contract, which might be considered an addition to the major trip.

[3] We are referred to Van Buskirk v. Roberts, 31 N. Y. 662, as authority in support of the charge. In that case the contract was made with an agent of the defendant for transportation from New York to San Fran-

cisco, via the Isthmus of Panama. The contract provided for transportation from New York to Panama by steamship, and then from Panama to San Francisco, and there was excepted from the contract of carriage the journey across the Isthmus. The agreement between the parties provided there should be a wait at Panama of not exceeding 5 to 10 days. The plaintiff sailed, and because there were no steamers sailing to San Francisco and he was forced to wait a longer period of time, after becoming ill with fever, and started home. This was due to the conditions at the Isthmus. He was made seriously ill, and the court held he was entitled to recover the passage money back, and expenses he had been put to at the Isthmus, and damages for his illness. This was an entire contract for transportation from New York to San Francisco, which the defendant did not perform, and under those circumstances the plaintiff was entitled to recover his money. In the case at bar the contract with which the plaintiff started out from New York was fully performed. It was error to permit the jury to consider as an element of damages the $2,405, passage money paid.

Error is assigned for allowing the jury to consider, as an element of damage, the physical condition of the wife of the defendant in error. Testimony was offered, showing that she was in good health prior to the Beyrouth incident; that she was taken sick immediately following the incident; that her health was bad, and then the following:

"Q. Give us the general state of her health. A. It was bad.

"Q. What was she suffering from?

"Mr. Wheeler: I object to that.

"The Court: Sustained.

"Q. What effect did Mrs. Ebsary's sickness during the rest of the trip have upon you?

"Mr. Wheeler: I object to that.

"The Court: If you wish to show merely—

"Mr. Moore: I wish to show that it depressed him, as I have indicated, and worried him.

"The Court: Overruled.

"Mr. Wheeler: Exception. It is too remote, and not an issue in this case.

"Q. (Last question read.) A. It had me worrying all the time.

"Q. Did you have to help take care of her? A. Yes, sir."

The wife of the defendant in error was permitted to testify that immediately afterward she burst out crying, was greatly humiliated, went upstairs to her stateroom and became hysterical, and that her husband tried to quiet her, but she kept on crying, "thinking I should be so humiliated in front of these people." She then testified that she was sick and confined to her cabin, and that this depressed her husband. Upon this proof, the court charged the jury that they might consider this, and include it in the amount of damages which they concluded to award the defendant in error: "A further item that you may consider and include in the amount of damages that you conclude to award him is the humiliation of his wife, if you believe that she, too, was humiliated, and that it added to or augmented the discomfort and suffering of the plaintiff; but this asserted despondency and sickness must be directly, not remotely, traced to the treatment received from the defendant's agent."

[4, 5] It appears that there was a separate action for damages pending on behalf of the wife, which was not being tried with this action. It is argued that this evidence was admissible under the doctrine of Boyce v. Greeley Square Hotel Co., 228 N. Y. 106, 126 N. E. 647. In that case Mrs. Boyce sued to recover damages sustained by her. Her husband was treating her in a hotel room, when the room was broken open by a hotel detective, and vile and insulting words addressed to her. The court held that the breach there consisted of the unjustifiable and forcible entrance of the defendant's servant under conditions which distressed and shocked her. In addition to the insulting and abusive language used, her husband was arrested and removed from the hotel. It was permissible to show the arrest as purely incidental to the wrong done, but the mental aggravation because of the wrong done to the husband was not considered by the court. The right of recovery of defendant in error's wife would include these elements. The effect of his wife's sickness upon him, in this kind of an action, is inadmissible. There is a marked distinction between this case and the classes of cases where such evidence may be received. The damages here must be confined to the pecuniary injury actually sustained. The shock, distress, or humiliation of another may not enter into the damages of the defendant in error. In a libel action, there is involved, not only the sense of the publication, but the effect upon the reader acquainted with the person referred to, and there such evidence is received.

The cases relied upon in support of the defendant in error's position (Flam v. Lee, 116 Iowa, 289, 90 N. W. 70, 93 Am. St.

Rep. 24; Ott v. Murphy, 160 Iowa, 730, 141 N. W. 463) are distinguishable. Those cases hold that the plaintiff's recovery must be restricted to the injuries suffered by himself, and that the basis of recovery in an action for malicious prosecution is mental suffering and anguish arising from the wrongful charge and arrest, and if this be in the presence of one's family and friends, bringing him into shame and humiliation before them, is a proper matter to be considered as bearing upon the pain inflicted upon him. It is impossible to see upon what principle it may be claimed that the sickness of his wife is an element of damages in his action. His distress here is the humiliation which was visited upon him, and that only might be considered. The effect of her sickness is too remote and consequential. To allow him damages for the injuries to his wife would be to allow two recoveries for the same cause of action, since there is an action pending by her. The mental suffering in this action is confined to the defendant in error, no matter what may have been his sympathy for her suffering. This evidence was improperly received.

Exception is taken to the testimony given by the wife of the defendant in error, wherein she stated what she overheard the doctors say as to the condition of her husband. She was permitted to testify that, while crossing the Mediterranean Sea, her husband was taken sick and the doctor examined him. She stated that her husband told his condition on the boat; "that he could not digest his food, and had trouble in his stomach, and the doctor diagnosed it as nervous indigestion." She then said that this same nervous indigestion continued until he arrived in Paris. There a doctor came in to see him while he was at the hotel. She was permitted to testify to what the doctor said, as follows:

" 'You seem to be laboring under a great mental strain; your system is highly excited, very nervous.' He gave him medicine to quiet him; and further she testified: He said, 'Doctor, I am a very sick man; I have been having trouble with my stomach; I have not been able to keep anything on my stomach.'

The doctor examined him and said, 'You seem to be laboring—'

"Q. Wait a minute. Did the doctor ask him any questions? A. He asked him if he had been ill previous to coming to Paris.

"Q. Did he ask him any other questions? A. If he ever had the yellow jaundice.

"Q. Any others? A. I cannot recall any others.

"Q. What was the appearance of Mr. Ebsary's face and color of his skin at that time? A. Around the eyes, yellow.

"Q. After the doctor asked these questions, and Mr. Ebsary answered them as you have testified, the doctor made a diagnosis and gave Mr. Ebsary some medicine? A. Yes, sir."

[6, 7] An attending physician may testify to complaints made to him when he attends a patient for the purpose of treating him; but the testimony of a third person, other than a physician, of complaints and statements is not admissible. It differs from information given by a patient to a doctor who is attending him professionally. Roche v. Brooklyn & Newton R. R. Co., 105 N. Y. 294, 11 N. E. 630, 59 Am. Rep. 506; Davidson v. Cornell, 132 N. Y. 228, 30 N. E. 573. What transpired days later on the boat, and again weeks later in Paris, was not part of the res gestæ. It was hearsay. Expressions of mental or bodily injuries or mental feeling of an individual, which are made at the time of injury, are admissible. Representations made by a sick person of the nature and symptoms and effects of a malady then made are admissible. A doctor's testimony as to such statements, which formed a part of the res gestæ, is competent evidence. Northern Pac. R. R. v. Urlin, 158 U. S. 271, 15 S. Ct. 840, 39 L. Ed. 977; Insurance Co. v. Mosley, 8 Wall. 397, 19 L. Ed. 437. But this rule has no application to statements made to the doctor days after, while on the boat crossing the Mediterranean Sea, and later at the hotel in Paris. They are not part of the res gestæ. These errors which we have pointed out were prejudicial, and require us to reverse the judgment and order a new trial.

Judgment reversed, and new trial ordered.