CONLIN, Respondent, vs. SOWARDS, Executrix, Appellant.

*September 12—October 9, 1906.*

*Wills: Construction: Life estate or fee? Precatory trusts.*

A testator devised land to his wife, subject to the payment of certain legacies, and also devised and bequeathed to her all the residue of his estate, "to have and to hold the same unto her forever." The will then proceeded as follows: "It is my wish that my said wife . . . will so arrange her affairs that whatever property may be left at her death the same will be divided as near equally as possible between my said daughters." *Held,* that these precatory words were advisory only and did not create any trust, and that, subject to the payment of debts, legacies, and expenses, the will gave the property mentioned to the widow absolutely.

APPEAL from a judgment of the circuit court for Columbia county: CHESTER A. FOWLER, Circuit Judge. *Reversed.*

It appears from the record and is undisputed that Daniel Sowards died December 3, 1902, leaving a last will and testament executed April 12, 1901, and the same was admitted to probate by the county court in February, 1903, and an executrix appointed. The executrix having failed to file any account of her administration, and a dispute having arisen over the rights of the respective parties under the will, the plaintiff, as one of the heirs at law and devisees and legatees under the will, filed a petition in the county court February 24, 1905, calling upon the executrix to show cause, if any, why she should not file her account and why the will, and particularly the fifth paragraph thereof, should not be construed by the county court. A hearing was thereupon had, and on September 9, 1905, the county court found and adjudged that the said *Elizabeth L. Sowards* took an absolute estate in the property mentioned in the fifth paragraph of the will, free and clear of any right or claim or interest therein in remainder or otherwise in favor of her daughter *Evelyn A. Conlin* (the plaintiff), and the executrix was not required to file and settle her account of administration. Said daughter duly appealed from that judgment to the circuit court.

At the close of the hearing and trial in the circuit court that judgment of the county court was wholly reversed, and upon the facts, which are undisputed, the circuit court found as conclusions of law, in effect, that the widow and executrix holds the property devised and bequeathed to her by the fifth paragraph of the will in trust to pay the legacies therein mentioned and the costs and expenses of burial and the administration of the estate, and to have the full use, benefit, and enjoyment of the net rents, profits, and income of the residue for life, with remainder over to her two daughters, *Evelyn A.* and Florence E., and that such executrix was by the will vested with a special power in trust and charged with the duty

of making a division of said remainder at her death, by testament or otherwise, between her said daughters in portions as nearly equal as possible, and that she should be required to render to the county court a full account of her administration of said estate. Judgment was therein ordered accordingly with costs. From the judgment so entered the executrix appeals.

*George W. Stephens,* attorney, and *F. W. Hall,* counsel, for the appellant, to the point that the presumption, in case of doubtful words, is against a trust, cited *Foose v. Whitmore,* 82 N. Y. 405; *Knox v. Knox,* 59 Wis. 172, 183; *Swarthout v. Swarthout,* 111 Wis. 102.

*E. E. Brossard,* for the respondent, to the point that the fifth paragraph of the will gives the residue of the estate to the widow in trust, to enjoy the use of the same for life, with remainder to the two daughters, cited *Swarthout v. Swarthout,* 111 Wis. 102; *Knox v. Knox,* 59 Wis. 172; *Jones v. Jones,* 66 Wis. 310; *Littlewood's Will,* 96 Wis. 608; *Derse v. Derse,* 103 Wis. 113; *Webster v. Morris,* 66 Wis. 366, 394; *Tabor v. Tabor,* 85 Wis. 313; *Wolbert v. Beard,* 128 Wis. 391; *Powers v. Powers,* 28 Wis. 659; *Warner v. Bates,* 98 Mass. 274; *Smith v. Bell,* 6 Pet. 68; *Noe v. Kern,* 93 Mo. 367, 6 S. W. 239; Woerner, Adm'n, 874–877; *Harrisons v. Harrisons' Adm'x,* 2 Grat. 1, 44 Am. Dec. 365, 369; *Wood v. Camden S. D. & T. Co.* 44 N. J. Eq. 460, 14 Atl. 885; *Van Dyck v. Van Beuren,* 1 Caines, 84; *Phillips v. Phillips,* 112 N. Y. 197; *People v. Powers,* 147 N. Y. 104, 41 N. E. 432, 35 L. R. A. 502.

CASSODAY, C. J. The testator was eighty-one years of age at the time of executing his last will, and was in poor health and had been for several years. He had by his first wife two children, Marion F. and Ransom J., both of whom are mentioned in that will. He married the defendant, *Elizabeth L.,* in 1863, when he was forty-three years of age and she was

only twenty years of age. By her he had two children, *Evelyn A.,* born in 1866, and Florence E., born in 1876, and they are both provided for in the will. At the time that will was executed *Evelyn A.* resided with her husband a mile or two from her father's residence and was in the habit of visiting him frequently. Florence E. resided with her husband in a remote part of the state. At the time of making that will *Elizabeth* was fifty-eight years of age and in good health. The best of feeling prevailed among the several members of the testator's family. The testator had made two wills prior to the one in question. In most respects they were quite similar. The first was made December 2, 1893; the second was made January 12, 1897; and the will in question was made April 12, 1901.

By each of the three wills Marion F. was to have $2,200 two years after the testator's death. In each of the three wills it was provided that Ransom ·J. should have nothing, for the reason therein stated that the testator had already advanced to him his full share of the estate. By his first will he gave to *Evelyn A.* $2,100 payable two years after his death; but by the second and third wills he gave to her a note for $3,000, executed by her and her husband and secured by a mortgage on her husband's land, executed by both of them, and such bequest included the accrued interest thereon. By his first will he gave to Florence E. $2,200 payable two years after his death. In the second will the same amount is given to her, but it is made payable ten years after his death; and in his last will the amount is reduced to $2,000, payable at such time as would best suit the convenience of his wife. In his first will, after the payment of his debts and legacies, he gave, devised, and bequeathed to his wife "all the rest, residue, and remainder" of his estate, *"with the request and direction* that, whatever property *may be left* after the death ·of my said wife, it shall descend, share and share alike, to my children, Marion F. Sowards, *Eva Conlin,* and Florence

Sowards." In his second will he gave his life insurance to his wife to be used in paying his debts and legacies; and then, after requiring his wife to pay his debts and the legacies mentioned, he devised to his wife his farm, "consisting of 220 acres, the same to be used, held, and enjoyed by my said wife during the term of her natural life, and after her death the same to descend, go to, and belong to my said daughter Florence Sowards." At the time that will was executed, Florence E. was less than twenty-one years of age and unmarried, and the testator was seventy-seven years of age.

It appears that George W. Stephens, of Columbus, Wisconsin, who appeared as attorney for the estate in the probate of the will, drew each of the three wills and witnessed each of them. This being so, the broad difference in the language used in the provisions for the widow in the will in question and such provisions in the two former wills would seem to indicate a different purpose in the mind of the scrivener, if not in the mind of the testator. The language of such provision in the last will and here to be construed is as follows:

"*Fifth.* I give, devise, and bequeath to my beloved wife, *Elizabeth L. Sowards,* my farm of 217½ acres of land situated in Hampden, Columbia county, Wisconsin, which said farm is subject, however, to the payment of the legacy to Marion F. Sowards and the legacy to Florence E. Stewart above mentioned. And I also give, devise, and bequeath to my said wife, *Elizabeth L. Sowards,* all money derived on my life insurance policy, all of my stock on the farm, and all my farming utensils, and *all* the rest, residue, and remainder of my estate *of every kind and nature whatsoever and wheresoever* the same may be situated. To have and to hold the same unto the said *Elizabeth L. Sowards forever. It is my wish* that my said wife *Elizabeth L. Sowards will so arrange her affairs* that whatever property *may be left* at her death the same *will be divided* as near equally as possible between my said daughters *Evelyn A. Conlin* and Florence E. Stewart."

Of course, we are not called upon to consider the intention of the scrivener, but only the intention of the testator as evinced by the language employed by the scrivener in the will here in question. The friendly feeling which prevailed among the several members of the testator's family, and his deep affection for all his children, as found by the trial court, seem to be manifest from the wills themselves, when considered in connection with the changes which took place from time to time in the family. The bequests to the several children by the first will seem to have been substantially equal, followed by a residuary clause giving all the residue of his property to his wife for life, with the remainder to three of his children therein named, omitting Ransom J., to whom, as therein stated, he had theretofore given "property equal in amount to the sum" therein given to his other children respectively. The only substantial changes in the second will from the first were in respect to the gifts to *Evelyn A.* and Florence E. and the residuary bequest. Such changes in the will seem to have been suggested by changes which had taken place in the situation of the parties. *Evelyn A.* had been married for several years and had three children. At first she and her husband lived with the testator's family for a part of a year. Then they went to Minnesota for about a year. Then they came back and worked the testator's farm for three years. Then they bought from the testator and moved onto a farm of 120 acres and gave back to him the note and mortgage for $3,000 mentioned in the second and third wills. That farm was only a mile or two from the testator's home, and *Evelyn A.* was in the habit of visiting her father and mother frequently. That left Florence E. the only child remaining at home with her parents. As indicated, she was, at the time that the second will was executed, less than twenty-one years of age and unmarried, and, manifestly to induce her to remain at home with her mother, the time of the payment to her of the legacy

mentioned in the first will was extended from two years after his death to ten years after his death, and the farm was devised to the "wife during the term of her natural life," and then after her death to Florence E. as sole residuary devisee.

During the four years and over between the making of that second will and the making of this last will Florence E. got married and moved with her husband to a remote part of the state and had one child. Her husband had a good business and was in fair financial circumstances, and they were in a condition to have a good living. Such marriage and removal of Florence E. left the testator and his wife alone at home. The testator was in very poor health for ten years prior to his death. For three or four years prior to his death his condition was such that he was unable to get out of the house during the winter. His wife transacted the business when he was sick. Undoubtedly, the facts mentioned induced the testator to execute the will in question April 12, 1901. The only substantial change between that will and the one made four years and three months before was in relation to the provisions for the wife. The testator was then eighty-one years of age and manifestly expected soon to pass away, and then his wife would be left alone. Unless it was the purpose of the testator to make a more certain and substantial provision for his wife therein than by his former will, then it would seem to have been without significance. If by the provision of the will above quoted she only took the property therein devised and bequeathed to her *in trust* to pay legacies and expenses, and "to have the full use, benefit, and enjoyment of the net rents, profits, and income of the residue for life, with remainder over," as held by the trial court, then she got nothing thereby which she would not have received under the second will, had the same never been revoked. Nevertheless, if the provision of the will above quoted requires such a construction, then it

should be so construed regardless of its futility. Of course, the important thing is to ascertain and give effect to the intentions of the testator as expressed in or implied from the language of his will. That language is very sweeping. He first devised the farm to his wife subject to the payment of legacies. He then gave, devised, and bequeathed to her all money derived from life insurance, all of his stock, all of his "farming utensils and all the rest, residue, and remainder" of his "estate of every kind and nature whatsoever and wheresoever the same" might "be situated—to have and to hold the same unto the said *Elizabeth L. Sowards forever."* Under our statutes the absence of words of inheritance is of no significance. Secs. 2206, 2278, Stats. 1898; *Baker v. Estate of McLeod,* 79 Wis. 534, 545, 48 N. W. 657. He also nominated her as executrix, and therein directed that she should not "be required to give bonds for the faithful performance of said trust as executrix," and thereby revoked all former wills by him made.

The question recurs whether the intention of the testator, as thus expressed, was modified or limited by the declaration contained in the will to the effect that it was his *"wish"* that his wife would "so arrange *her affairs* that whatever property" might "be left at her death the same" would "be divided as near equally as possible between" his said daughters. The *"wish"* expressed was as to what the wife would do in arranging her own affairs. Of course, if the wife took an absolute title to the property, subject to the payment of debts, legacies, and expenses, and never should dispose of the same by will or otherwise, then whatever would be left at her death would descend to the two daughters in equal shares. We are not aware of any well-considered adjudication holding that such mere "wish" of the testator that an executor or executrix would "arrange her affairs" or property in some prescribed way has been held to be mandatory.

In *Smith v. Bell,* 6 Pet. 68, 70, 75–77, seemingly relied upon by the trial court, the testator, after the payment of his debts, legacies, and expenses, gave and bequeathed to his wife all his personal estate "to and for her own *use and benefit* and disposal absolutely; the *remainder* of said estate, after her decease, *to be for the use of the said Jesse Goodwin,"* his son. In construing this language the learned ·chief justice said:

"In the will under consideration but two persons are mentioned—a wife and a son. The testator attempts, in express words, to make a provision for both out of the same property. The provision for the wife is immediate; that for the son is to take effect after her death. . . . It must be admitted that words could not have been employed which would be better fitted to give the whole personal estate absolutely to the wife, or which would more clearly express that intention. But the testator proceeds: 'The remainder of said estate, after her decease, to be for the use of the said Jesse Goodwin' [his son]. These words give the remainder of the estate, after his wife's decease, to the son, with as much clearness as the preceding words give the whole estate to his wife. ·They manifest the intention of the testator to make a future provision for his son, as clearly as the first part of the bequest manifests his intention to make an immediate provision for his wife. If the first bequest is to take effect according to the obvious import of the words taken alone, the last is expunged from the will. . . . We are no more at liberty to disregard the last member of the sentence than the first."

In *Knox v. Knox,* 59 Wis. 172, 175, 177, 178, 18 N. W. 155, 157, also seemingly relied upon by the trial court, the clause of the will construed, omitting nonessentials, was this:

"I give, devise, and bequeath unto my wife . . . her heirs and assigns forever all my real and personal estate . . . having full confidence in my said wife, and hereby *request* that at her death she will divide equally, share and share alike, in equal portions as tenants in common, between my sons and daughters . . . *all the proceeds* of my said property, real and personal, goods and .chattels, hereby bequeathed."

The opinion of the court, written by Mr. Justice TAYLOR, is quite lengthy, reviewing the authorities, including *Smith v. Bell, supra,* and, among other things, he said:

"The two important questions to be considered in the construction of the provisions of the will above quoted are: First, has the testator in his expressed request in said will clearly pointed out the persons whom he desired should be the recipients of his bounty, and has he clearly defined the part of his estate which he desired they should receive? And, second, does the language used by him clearly show that he intended it to be obligatory upon his wife, to whom he had devised all his property in fee, and not merely advisory? . . . In order to determine whether precatory words in a will create a binding trust, 'the real question always is whether the wish, desire, or recommendation expressed by the testator is meant to govern the conduct of the party to whom it is addressed, or whether it is merely an indication of that which he thinks would be a reasonable exercise of the discretion of the party, leaving it, however, to the party to exercise his own discretion.' . . . The words used by the testator in describing the property *he requests should go* to his children after the death of his wife are 'all the proceeds of my said property, real and personal, hereby bequeathed.' "

And so the court held:

"The words 'all the proceeds,' etc., mean the entire body of the estate, subject to such sales and conversions thereof as necessity or the interest of the parties might require."

The principles thus announced by Mr. Justice TAYLOR were fully recognized and enforced in *Tabor v. Tabor,* 85 Wis. 313, 55 N. W. 702, where "a testator, after giving to his wife his entire estate, 'the real estate in fee simple and the personal estate by a like absolute ownership,' proceeded: 'I do this in full trust and confidence that she will provide for the distribution of the same by her last will and testament among our children [naming them] in such proportions as shall be just and right; but this expression of trust and confidence is not to be interpreted as limiting her right of owner-

ship or power of distribution.'" And it was held "that the precatory words were advisory merely, and no trust was created."

The principles announced in both of those cases are fully recognized in a later case in this court. *Swarthout v. Swarthout,* 111 Wis. 102, 108–111, 86 N. W. 558, 560, 561. It was there said: "Every case stands upon the evidence of the testator's intention, arising out of each will." In that case particular stress was placed upon the expressed desire of the testator that the property and estate "devised, or so much thereof" as his wife might "be possessed of at her decease, shall go to or be by her given to our child or children, if any there be then living."

In a recent case decided in the New York court of appeals the testator gave his residuary estate to his wife, provided, however, that, if any part thereof remained unexpended or undisposed of at her death, such remainder he gave to his son, and added this clause: "And I expect and desire that my said wife will not dispose of any of said estate by will in such a way that the whole that might remain at her death shall go out of my own family and blood relation." *In re Gardner,* 140 N. Y. 122, 126, 35 N. E. 439, 440. The widow died leaving a will by which she gave a large portion of such remainder to the son and the balance to a sister. The court "held that the power to dispose given by the will included the right to dispose by will; that the estate of the wife was not qualified by the concluding paragraph expressing the testator's expectation and desire; also that, if that clause should be construed as implying a power in trust in favor of the son, the power was observed and fully executed." Id.

In a more recent case in that court it was held: "Where there is an absolute gift of real or personal property, in order to qualify it, or cut it down, the latter part of the will should show an equally clear intention to do so, by the use of words definite in their meaning, and by expressions which must be

regarded as imperative." *Clay v. Wood,* 153 N. Y. 134, 47 N. E. 274. See, also, *Collister v. Fassitt,* 163 N. Y. 281, 288, 296, 57 N. E. 490.

Upon reason and authority we must hold that, subject to the payment of debts, legacies, and expenses, the testator, by virtue of the portion of the will above quoted, gave, devised, and bequeathed to his wife his farm and all the money derived from his life insurance, all his stock, all his farming utensils, and all the rest, residue, and remainder of his estate of every kind and nature, to have and to hold the same forever.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with direction to transmit the record to the county court for further proceedings in accordance with this opinion. The taxable costs of both parties in this court are payable out of the estate.

