WILL OF LARSON : LARSON and another, Executors, Appellants, vs. SABBY, Respondent.

*March 7—April 11, 1933.*

For the appellants there was a brief by *Knowles & Doolittle* of River Falls, and oral argument by *L. S. Doolittle.*

For the respondent there was a brief by *White & White* of River Falls, and oral argument by *Ferris M. White.*

FOWLER, J. The will of Ole Larson, also known as Ole Larson Gonsholt, was duly admitted to probate and two of his sons named therein were appointed executors. Emma Sabby, a daughter, petitioned for construction of a provision of the will which she claims entitles her to a conveyance of the testator's farm and the machinery thereon, alleging that

she has demanded a conveyance thereof from the executors and they have refused to convey on the ground that the will is uncertain as to the petitioner's right thereto. The will is as follows, and the portion of which the petition asks construction is in italics:

"I, Ole Larsen Gonsholt Will my personal property to my five children as follows:

"Dr. Oscar Larsen, and Anton Larsen, and Emil Larsen, Josephine now Mrs. A. Bakke, Emma now Mrs. L. Sebby, each of them get an equal share after my decease.

*"My farm to be sold to Mrs. Sebby to of her Children for $5000.00. The machinery I got goes with the sale of the farm. The Term of sale to six year with 3% interest and tax to be paid, each get $1000 of, when the time comes due.* My House and Lot in River Falls, Josephine can have the chance to buy it for $1000.00 if she wish. Emil Larsen has already got $2000 of his share. $300.00 to Mission.

"I will point Dr. Oscar Larsen and Anton Larsen as Administrator.

"Dated February 10-1931.

"Witness Albert O. Johnson.

"Louise Larson.         OLE LARSEN GONSHOLT."

The testator was born in Norway and emigrated to this country when a young man. Such schooling as he had was received in the common schools of Norway. He spoke, read, and wrote both Norwegian and English. He took a daily paper, the local paper, and the "Dakota Posten." His children in their testimony agree that he kept posted on affairs generally, discussed public affairs, farming operations, and business affairs with others up to his death at eighty years of age. The will was executed ten months prior to his death. He left surviving him the five children named in the will and no other heirs. Mrs. Sabby has six children, the oldest of whom was seventeen years old and the youngest six, of whom the deceased was fond. His health during the last few months was failing but his conversation was rational and his mind clear.

The county judge held that by the paragraph construed the testator "directed his farm to be sold to the petitioner Emma Sabby" upon the terms stated in the will and "that such conveyance of said farm and machinery was to be made by the executors upon request of said Emma Sabby." But for the phrase "to of her children" in the sentence "My farm to be sold to Emma Sebby to of her children for $5000.00," there could be no doubt that the construction given was correct. The sentence "I will point" the two sons "as administrator" indicates the testator intended them to carry out his wishes respecting the sale, and selling implies conveying.

The appellants lay great stress upon the word "to" in the phrase "to of her children." The word "to" in Norwegian has the same meaning as the word "two" in English, and they argue that it indicates that the testator meant that the farm should be sold either to Mrs. Sabby and two of her children, or to Mrs. Sabby or two of her children, and that it is impossible to determine which he did mean; and that it is impossible to determine which two of her children he meant to prefer; and that it is impossible to tell whether Mrs. Sabby or the two children should have the choice of purchase in case he meant the right should go to her or her children. But to us it seems unreasonable to attribute to the word "to" the meaning of "two." The word is used with its correct English meaning in other places in the will. The testator was using English as his medium of expression, and he had sufficient command of the language to express his intent generally. The will is in his own handwriting. It was manifestly prepared without the aid of a lawyer. From the testator's familiarity with "business affairs" as his children use the term in their testimony, it is quite likely that he meant by the phrase the common expression in wills and conveyances "and to her heirs," and that the omission of the word "and" and the use of the word "children" instead of the word "heirs" was due to the lapses commonly incident

to age in the writings of aged persons in failing health. The children, at their ages, had no means with which to purchase the property and were incapable of procuring it. The provision only gives an option to purchase, and the children were incapable of binding themselves to an acceptance or exercise of an option. It cannot be presumed that the testator intended a purchase by them or to tie up his farm for six years with an option that could be voided for infancy at the end or near end of the term.

Adjudicated cases or texts do not furnish much aid in interpreting the provision before us. One rule of construction, by analogy, perhaps furnishes some support to the construction given. Where language is first used in a will expressive of the devise of a fee, words following inconsistent with such a devise are void as repugnant to the provision creating the estate and the devisee takes the estate created by the language first used. *Van Osdell v. Champion,* 89 Wis. 661, 62 N. W. 539; *Zillmer v. Landguth,* 94 Wis. 607, 69 N. W. 568; *Conlin v. Sowards,* 129 Wis. 320, 109 N. W. 91. Upon like reason where language is first used as here, expressive of the giving of a right to one person, language following inconsistent with the giving of such right is void as repugnant to the right first given. This was the view of the trial court which he expressed in his findings as follows: . . . "the words following the name of Mrs. L. Sebby 'to of her children' have no meaning and the same are repugnant to the grant to the petitioner, Emma Sabby."

The appellants cite a multitude of cases to the effect that it is not within the province of a court to make a will, and that if the testator fails to make clear his intent his effort to express it goes for naught. That rule is elementary and needs no citation to support it. The rule is equally elementary that the intention of the testator, if it can be ascertained from the will itself and the circumstances existing at its execution, must be given effect. We are of opinion that

the language of the will and the few circumstances in evidence indicative of the testator's intent warrant the construction given to the provision in controversy.

The appellants assign as error the allowance by the court of an attorney fee of $75 to the petitioner. This was error. Costs are not allowable except as provided by statute. Sec. 324.13, Stats., authorizes the allowance of a "reasonable attorney fee" to parties in county court in contests "upon application for the probate of any will, or in relation to any trust created therein, or for the allowance or approval of any account by law required to be made or filed by an executor." Contests over the construction of a will are not such proceedings. *Kronshage v. Varrell,* 127 Wis. 597, 107 N. W. 342. Attorney fees are therefore not allowable under this section. Sec. 324.11, Stats., governs the allowance of attorney fees in other matters. In contested matters such as this the county judge may, in his discretion, "award costs, including attorney fees to the prevailing party, . . . ; and when costs are allowed they shall be taxed at the same rate allowed for like services in the circuit court; but the attorney fees shall in no case exceed twenty-five dollars." Thus while the county court may award attorney fees as costs they must be "taxed" according to the schedule governing the taxation of attorney fees as costs in circuit court actions.

*By the Court.*—The judgment of the county court is affirmed as to construction of the will, but reversed as to costs with directions to determine the allowance of costs in accordance with the opinion. No costs to be taxed in this court except respondent will pay clerk's costs.