Estate of Gallagher: Gallagher and others, Appellants, vs. Gallagher, Respondent.

*November 9—December 6, 1938.*

For the appellants there was a brief by *Shannon & Higgins,* attorneys for Anna R. Gallagher and Mary E. O'Hare, and *John A. Kennedy,* guardian *ad litem,* all of Kenosha, and oral argument by *Mr. Frank J. Shannon, Mr. Joseph E. Higgins,* and *Mr. Kennedy.*

For the respondent there was a brief by *Benson, Butchart & Benson* of Racine, and oral argument by *Donald A. Butchart* and *James E. Tully* of Kenosha.

The following opinion was filed December 6, 1938:

ROSENBERRY, C. J.   On August 26, 1936, Martin Gallagher, at the time seventy-five years of age, and a resident of Silver Lake, Kenosha county, Wisconsin, duly executed his last will and testament.   The will was prepared by his attorney, and when he returned to execute it, the testator advised his counsel that he desired to have it modified.   Instead of rewriting the will the attorney prepared a codicil, which amended paragraph IV of the will.   The will and the codicil were executed contemporaneously and all parties are agreed that the will and codicil should be construed together as if they were one instrument.   Martin Gallagher died November 2, 1936.   There were objections to the probate of the will, the objections were overruled, and the will admitted to probate.   There is no appeal from the order admitting the will to probate.

The testator directed that his just debts and funeral expenses should be first paid.   By paragraph II of the will the testator gave to his sister, Mary Gallagher, the sum of $200 and the Holy Name Catholic Church, Wilmot, Wisconsin, the sum of $300.

Paragraphs III, IV, and V are as follows:

"III.   All the rest, residue and remainder of my estate, real, personal or mixed, of whatever nature and wherever

situate, which I may own or have the right to dispose of at the time of my decease, I give, devise, and bequeath to my sister Anna R. Gallagher of Silver Lake, Kenosha county, Wisconsin, and to my niece, Mary O'Hare of Kenosha, Kenosha county, Wisconsin, in trust, nevertheless, for the following uses and purposes:

"(a) To pay the net income of the trust fund to my sister, Anna Gallagher, so long as she shall live, at which time this trust shall terminate and the principal of this trust fund shall be distributed to my certain beneficiaries hereinafter named, entirely discharged from this trust.

"IV. After the death of my sister, Anna R. Gallagher, and until June 1, 1951, the following described property, to wit:

"Thirty-five acres, more or less, surrounding the home now occupied by Anna Gallagher and myself as our home. Anna Gallagher has been shown the limits of said described land and shall have it staked off, and also

"Seventy-five acres, more or less, immediately east and south of Salem Mound Cemetery, running from Highway 50 south to the Northwestern railroad tracks and from Silver Lake road east to Loretta Gallagher's farm, all in the town of Salem, Kenosha county, Wisconsin, shall be held in trust by Mary O'Hare, my niece, to be leased to others by said Mary O'Hare and the income and profits to be used to keep said premises in proper repair and said Mary O'Hare to receive reasonable compensation, to be approved by the county court, for her services. On June 1, 1951, said premises to be given to my grandnephew, Richard Gallagher, who is the son of John Gallagher, my nephew, of Chicago, Illinois, for and during his natural life and after his death to be divided equally between all of the children of my grandnephews and grandnieces, Richard Gallagher, Patsy Gallagher, Dolores Barrows, and Daniel Wirth, who are now living and any children of any other grandnephews and grandnieces that shall be born of my nephews and nieces.

"V. After the death of my sister, Anna R. Gallagher, Mary O'Hare shall sell all of my real and personal property, not already devised, but in no event shall she be compelled to sell the real estate within a period of fifteen years after my decease, and distribute the receipts as follows: To Mary

O'Hare, my niece, 5%; to Marguerite Gallagher, my sister, 5%; to Loretta Gallagher, my sister, 5%; to Matilda Foster, my sister, 5%; to Laura Foster Barrows, my niece, 5%; to Dolores Barrows, my grandniece, 2%; to Joseph Gallagher, my brother, 5%; to John Gallagher, my nephew, 5%; to Richard Gallagher, my grandnephew, who is the son of my nephew, John Gallagher, 10%; to Patsy Gallagher, my grandniece, who is the daughter of my nephew, John Gallagher, 10%; to Viola Wirth, my niece, 5%; to Daniel Wirth, son of Viola Wirth above named, 5%; the remaining 33% to be held and used for repairs and improvements on the property heretofore described and given to Richard Gallagher during his lifetime. In the event that any of the above-named heirs die before Anna Gallagher's death or before properties are sold, his or her share shall be divided amongst my surviving named beneficiaries in proportion to his or her share of the whole. The 33% to repair property to be ignored in this computation. It is my further wish that after Anna Gallagher's death, my personal property in the form of notes and mortgages may be sold for cash, in the discretion of Mary O'Hare and distributed to my named beneficiaries in the proportions named, at once."

By paragraph VI the testator appointed Anna R. Gallagher, his sister, and Mary O'Hare, his niece, executrices of the will and trustees thereunder. The testator gave his executrices full power of sale of real estate, personal property, etc., with authority to settle claims, but in terms conferred no power upon them as trustees.

The codicil is as follows:

"I, Martin Gallagher, of Silver Lake, Kenosha county, Wisconsin, do hereby declare this present writing to be a codicil to my last will and testament, bearing date the 26th day of August, A. D. 1936.

"Paragraph IV is amended as follows: After the death of Richard Gallagher, the property described in said paragraph IV shall be held for a period of thirty years by the oldest son of Richard Gallagher, or if he have no son, by his oldest daughter. If Richard has no child surviving him, said property shall be held for the thirty-year period, following his

death, by the oldest son of Patsy Gallagher, or if she have no son by her oldest daughter. If neither Richard Gallagher or Patsy Gallagher have no child surviving either of them, said property shall be held for the thirty-year period by the oldest son of Daniel Wirth, or if he have no son by his oldest daughter. At the end of the thirty-year period, or if none of above named have children to take, the property shall be equally divided between my then living great grandnephews and great grandnieces."

Upon the trial, the petitioner contended, and the court found:

*First:* That the instruments declared to be a last will and testament and codicil thereto constitute one will and are to be construed together.

*Second:* That the specific bequests to Mary Gallagher and Holy Name Catholic Church of Wilmot are valid bequests.

*Third:* That the devise of one hundred ten acres of real estate, provided for in paragraph IV of the will of said deceased, suspends the absolute power of alienation of said real estate in violation of ch. 230, Stats., and is void and of no effect.

*Fourth:* That paragraph V creates a trust upon approximately three hundred acres of real estate contrary to the provisions of chs. 230 and 231, Stats., and is void and of no effect.

*Fifth:* That the disposition of the residue and remainder of the estate commencing with paragraph III of the will of said deceased, is a connected and inseparable scheme of disposition, each part of which is so connected with the others that they are interdependent, and the intention of the decedent would be defeated if one portion were retained and other portions rejected; that the entire portion of said will, commencing with paragraph III, was made by the testator pursuant to one plan of disposition, no part of which would have been made unless the entire plan of disposition could be consummated; that paragraphs III, IV, V, and the codicil are void and of no effect.

*Sixth:* That the entire estate of the deceased, after the payment of his debts, funeral expenses, and bequests provided in paragraph II of said will, should be assigned and distributed in accordance with the law of descent. Judgment was entered accordingly.

If the judgment stands, the whole testamentary scheme, with the exception of the payment of the specific bequests, is defeated. The guardian *ad litem* joins in the brief of the executrices. We shall therefore state the contentions of the executrices. The executrices contend that paragraph III of the will which creates a trust in favor of Anna Gallagher, the net income thereof to be paid to her during her lifetime, is standing by itself a valid trust and separable. It is not denied that standing by itself paragraph III creates a valid trust.

By the terms of paragraph IV, after the death of Anna R. Gallagher, the one hundred ten acres therein described are to be held in trust by Mary O'Hare, to be leased to others by the trustee, she to keep the property in proper repair and receive a reasonable compensation. It is contended that this is an invalid trust, first, for the reason that there is no beneficiary; second, that it is not created for one of the purposes stated in sec. 231.11, Stats., and the trial court so held. The executrices attempt to avoid this result on the ground that it would be the duty of the trustee under the provisions of secs. 230.38 and 230.40, Stats., to accumulate the income which would belong to Richard Gallagher as owner of the next eventual estate. The difficulty with this proposition is that sec. 230.40 does not apply. The situation dealt with in sec. 230.40 is that when in consequence of a valid limitation of an expectant estate there should be a suspension of the power of alienation and there is no valid direction for their accumulation, the rents and profits shall belong to the person entitled to the next eventual estate. The expectant estate under the terms of this will is the estate for life of Richard Gallagher. Upon this estate there is no limitation. It is not

terminable otherwise than by his death. For that reason the section is inapplicable.

It is considered that if there be no beneficiary, for the reasons advanced the trust sought to be created by the first part of paragraph IV is invalid. *Danischefsky v. Klein-Watson Co.* 209 Wis. 210, 244 N. W. 772. The will in terms makes no disposition of income which is earned between the death of Anna and June 1, 1951, nor does it appear what the probable income of the property is nor the amount which it will be necessary to devote from the income to the payment of taxes, repair of the buildings, and compensation of the trustee. It is quite apparent from the whole instrument that the testator's concern was first for his sister, Anna, and second for his nephew, Richard. The provision in paragraph IV that Anna should rent the property out to others and apply the proceeds thereof to the repair of the property, is a provision clearly for the benefit of Richard. It is also apparent that the enjoyment of the life estate by Richard was not postponed for any other reason than that he receive the estate when he should have reached the age of discretion. He will be twenty-five years of age on June 1, 1951, and the testator evidently thought that he should not be charged with the care and responsibility of the property earlier than that time. By paragraph V of the will all the residue of the testator's estate is to be sold and divided except thirty-three per cent, which is "to be held and used for repairs and improvements on the property heretofore described and given to Richard Gallagher during his lifetime."

While paragraph IV does not state in express terms that the surplus income earned before June 1, 1951, shall be expended for Richard's benefit, and he is not designated by name as the beneficiary of the trust, considering the will as a whole it seems clear that the testator intended that the income was to be used for Richard's benefit, but that the enjoyment of the life estate should not begin until he reached the age of

twenty-five years. Were it not for the fact that the will unmistakably indicates that Richard is not to receive the property until June 1, 1951, Richard would succeed to the life estate upon the death of Anna. The language of the will, considered in connection with Richard's age and the fact that he will not reach his majority until 1947, shows quite plainly that the testator was endeavoring to provide for the management and upkeep of the property during Richard's minority and until he reached the age of twenty-five years. It is considered, therefore, that it is plainly inferable from the whole will that the testator intended that the surplus income, if any, should be paid to Richard or his guardian, and that he is the beneficiary thereof.

It is considered upon the whole will that Richard is the beneficiary of such unexpended income as may accrue between the death of Anna and June 1, 1951. What the will does in effect is to give to Richard a life estate as of the death of Anna, but the right of enjoyment is postponed to June 1, 1951. No one else by the terms of the will has a beneficial interest in the rents and profits from the death of Anna to June 1, 1951. It is a clear implication from the terms of the will that the testator intended Richard to be the beneficiary of the rents and profits over and above the amount necessary to preserve the property, make repairs, and compensate the trustee. The beneficiary being ascertainable, although not named, the trust is a valid trust. Restatement, Trusts, p. 288, § 112; *Will of Smith,* 176 Wis. 494, 186 N. W. 180.

The trial court's disposition of the matter rests upon the proposition that the power of alienation is suspended for a period longer than during the continuance of a life or lives in being at the creation of the estate and thirty years thereafter (sec. 230.15, Stats.), and is therefore void. Both Anna and Richard were living at the time of the execution of the will and at the death of the testator, as of which time the will speaks. Anna was to have the income of the entire estate

during her lifetime. It is argued that under paragraph IV, Richard may die and Anna may die at some time prior to June 1, 1951, that the unexpired portion of the fifteen-year period added to the thirty years provided for in the codicil would suspend the power of alienation for more than the two lives in being and thirty years thereafter. Whether or not this is true, depends upon the construction of the will. It is clear from the will that the testator assumed that Richard would outlive Anna. In any event Anna's rights under paragraph III continue during her lifetime. If, however, Richard dies before Anna, then both estates determine upon Anna's death. The will provides that after his (Richard's) death and thirty years thereafter, the one hundred ten acres shall be divided equally between all the children, his grandnephews and grandnieces, etc.

If, when Anna's interest terminates, Richard has predeceased her, then the estate is to be distributed in accordance with paragraph IV as amended. While the testator did not have in mind the situation that will come into existence if Richard predeceases Anna, his intention is perfectly clear. While the trial court had in mind the provisions of the statute, it held "in the instant case the testator has fixed the measurement of time as being the life of Richard Gallagher and thirty years after his death," and then concluded that because Anna might possibly outlive Richard and the thirty-year period, there was a suspension of the power of alienation, in contravention of the statute. If Anna survives Richard, the estate will be distributed upon her death and the expiration of the period of thirty years from the death of Richard, if any part of that period remains. In no contingency will the power of alienation be suspended for a period longer than two lives in being and thirty years thereafter. The trial court's error is based on conclusion drawn from evidence taken on the hearing. Under the will, Richard's life is no more a "designated life" than is the life of Anna. The

testator evidently thought that Richard would outlive Anna, but the will does not fail if Anna outlives Richard. Evidence should not be resorted to to establish an intention and the will invalidated because the will as construed does not conform thereto.

It is next contended that if it be held that the provisions of paragraphs III and IV are otherwise valid, it is not clear from the will what disposition of the property was intended by the testator during the thirty-year period immediately following the death of Richard Gallagher. It is considered that under the provisions of the codicil, upon the death of Richard his eldest son, if he has one, will succeed to an estate for years which will be held by the son. If Richard has no son, then the estate for years will vest in his eldest daughter, and so on, as provided by the will. If none of the persons named take, then the property is to be equally divided at the time of Richard's death. The contention of the petitioner that the estate is not to be distributed until thirty years after Richard's death, and until it is determined that none of the above named have children to take, cannot be sustained. The provisions of paragraphs III and IV as amended by the codicil, being valid, that part of the testator's estate described in paragraph III is disposed of.

Paragraph V provides for the disposition of all the rest, residue, and remainder of the property of the deceased. It is difficult to make the provisions of paragraph V clearer in that respect.

It is next contended by the objectors that the property disposed of under paragraph V of said will is divided into numerous small shares among various relatives, totaling sixty-seven per cent. Thirty-three per cent is directed to be held and used for repairs and improvements on the property described, and there is no final disposition of such thirty-three per cent under paragraph V of the will. It is to be noted that the thirty-three per cent is to be held and used for re-

pairs *and improvements* on the property in which Richard is to have a life estate. It is considered that this is a complete disposition of the thirty-three per cent. If and when the power of sale given to Mary O'Hare is exercised, the thirty-three per cent is then to be expended in improving and repairing the property in which Richard has a life estate. At that time, if Richard survives, he will be in the possession and enjoyment of his estate. The will does not contemplate that the thirty-three per cent is to be held in trust and expended over any period of time greater than that necessary to comply with the terms of the will, which requires that it be expended in the repair and improvement of the property. The property being to some extent summer-resort property, is of a type that will reasonably receive any improvements provided for by the application of the thirty-three per cent.

Paragraph V of the will directs the sale of the residuary estate, but Mary O'Hare, in whom the power is vested, shall in no event be compelled to sell the real estate within the period of fifteen years. No disposition of income during the fifteen-year period is made by the will, if it is income-bearing property, and there is income over and above that required for the preservation and maintenance of the property. It is considered that such surplus income should be distributed among the beneficiaries named in paragraph V "in proportion to his or her share of the whole." The income which will be allocated to the thirty-three per cent is to be used in the repair of the property described in paragraph IV, and as provided therein.

We are not unaware of the fact that other interpretations might be placed upon this will. In interpreting a will it is the duty of the court to carry out the intention of the testator as far as possible without violating established legal principles, and to construe the will in favor of testacy rather than intestacy. The intention of the testator, except in case of

doubt and ambiguity, is to be determined from the will itself. Apparently in this case much testimony was received relating to declarations of the testator at and previous to the time the will was drawn. The conclusions arrived at by the trial court were to some extent based upon this testimony. It is quite evident from the will itself that the testator sought to control the property by the terms of his will, so long as the law permitted. That in no way rebuts his intention to make a valid will. On the contrary, such a desire would lead him to be very careful to see that he was within the provisions of the law. It is evident also from the face of the will that it was drawn with the statute of perpetuities clearly in mind. What was overlooked was the indefiniteness of the trust created by the first part of paragraph IV, and to make other provisions definite and certain, for instance, the failure to more specifically provide what should be done with the remaining thirty-three per cent to be held for repairs and improvements as provided in paragraph V. We have not considered it either necessary or advisable to suggest all the possible interpretations which might be placed upon the will and give reasons for rejecting them. Such a treatment of the matter would in no way affect the final determination of the court, and would introduce an element of confusion and uncertainty into the determination of the court.

*By the Court.*—Judgment appealed from is reversed, and cause remanded with directions to enter judgment as indicated in the opinion. It is considered that this is a proper case for the allowance of reasonable counsel fees, disbursements, and costs in this court, out of the estate, and they are so allowed.

The following memorandum was filed March 7, 1939:

PER CURIAM. The appellants have duly moved the court to clarify the mandate. Under the mandate counsel for the respondents have presented claims for counsel fees and costs

amounting to a total of $1,069. It appears that costs can be allowed only under sec. 324.11, Stats., and by that section attorney fees are limited to $25. Under the mandate in this case counsel fees should be limited accordingly. *Will of Larson* (1933), 211 Wis. 237, 247 N. W. 880.